■ In the Matter of AMERIPRISE AUTO & HOME INSURANCE COMPANY, Respondent, v LI CAO, Appellant. [49 NYS3d 432]—

Order and judgment (one paper), Supreme Court, New York County (Carol R. Edmead, J.), entered on or about December 3, 2015, after a framed issue hearing, denying respondent's motion for, among other things, an order directing the parties to proceed to arbitration of respondent's claim for supplemental

underinsured motorist (SUM) benefits, and granting the petition to permanently stay the SUM arbitration, unanimously reversed, on the facts, without costs, the judgment vacated, and the parties directed to proceed to arbitration.

Respondent Li Cao alleges that, on February 7, 2012, she was knocked down by a bicyclist as she was crossing Madison Avenue at East 43rd Street in Manhattan, and then struck again by a vehicle owned by Avis-Budget Group/PV Holding Corp. and operated by Valencourt Dixon. After settling her claims against Avis and Dixon, Cao sought SUM benefits under her own policy with Ameriprise Auto & Home Insurance Company, and demanded arbitration. The Ameriprise policy provides SUM benefits, in relevant part, when the insured suffers bodily injury as a passenger in a vehicle or "as a pedestrian as a result of having been struck by an uninsured . . . or an underinsured motor vehicle."

Ameriprise commenced a petition seeking a permanent stay of the SUM arbitration requested by Cao, arguing that the policy did not apply because the vehicle driven by Dixon did not come into "contact" with respondent within the meaning of the coverage. Supreme Court (Milton A. Tingling, J.) directed a framed issue hearing on the issue.

The court (Carol R. Edmead, J.) found that respondent had not suffered injuries as a pedestrian struck by the motor vehicle operated by Dixon, and permanently stayed the underinsured motorist's arbitration. The court found respondent to be "incredible" based on testimony that her English was not "so good" in responding to a question on an irrevelant issue. Although the court found a nonparty witness who appeared on behalf of petitioner to be "very credible," the court discounted his testimony that respondent was a pedestrian crossing the intersection. Instead, the court credited the irreconcilable testimony of Dixon, whom the court found "forthcoming, if to some degree inconsistent," that respondent was not a pedestrian but a rider on a delivery bicycle who hit his vehicle's right fender. We now reverse.

The hearing court's determination that there was no direct contact between respondent and Dixon's car was not supported by a fair interpretation of the evidence. The nonparty witness, whom the hearing court found to be "very credible," testified that respondent pedestrian was struck by a food delivery bicyclist while crossing Madison Avenue from west to east at 43rd Street.

The testimony of respondent was consistent with that of the

nonparty witness in all material respects.* She explained that the incident occurred while she was walking from her office in midtown to Grand Central station to catch a train home to Connecticut. Respondent testified that while on 43rd Street crossing Madison she was knocked to the ground by a bicyclist. Seconds later, she was struck by the driver's approaching vehicle and lost consciousness. When she awoke, she was en route to the hospital in an ambulance.

The driver testified that he observed a cyclist on a delivery bike traveling between lanes to his right. The bicyclist "fell," and her basket hit the front bumper of his vehicle. He maintained that at no time had the vehicle come into contact with the bicyclist, as opposed to the bicycle. He further maintained that the vehicle had not come into contact with any pedestrian; indeed, he testified that no pedestrians were crossing the street. After the accident, the driver exited the vehicle and observed an Asian woman lying in the roadway. He believed the woman to be the cyclist who had struck the vehicle.

While Dixon maintained that there was no contact between his bumper and the cyclist, he also testified that after he came to a stop, a guy came up to him and said, "I saw you. You ran her over." Further, on cross, Dixon acknowledged that once the woman tipped over, she went below the level of the car and that he lost sight of her for two seconds. He heard the contact with his bumper but was not able to see it. He was not sure what the woman's head came in contact with.

The driver's version of events—that respondent was the bicyclist he had "glanced" at in his mirror prior to the accident—defies logic and was contradicted by his admissions at the scene. The driver's version of events had respondent—a professional with a masters degree who worked at Morgan Stanley—riding a delivery bicycle with a large basket. At the scene, the driver admitted that the accident occurred as respondent and the nonparty witness claimed, reporting that "[a] pedestrian was hit by a bicyclist and was knocked down," and he "was too close to [the] pedestrian to stop." Dixon's explanation that he erroneously used the word pedestrian when he meant to say bicyclist is suspect to say the least.

Given the differing versions of events, the hearing court should have accepted the "very credible" testimony of the disinterested nonparty witness, which was consistent in all

---

* The witness testified that respondent crossed the street against the light; respondent maintained that when she started crossing the street the countdown light was on the number eight.

material respects with that of respondent pedestrian, rather than the irreconcilable testimony of a party found to be "inconsistent."

Further, there was no basis for finding respondent to be "incredible." Respondent hypothesized that her failure to understand counsel's allegation of an inconsistency between her deposition and hearing testimony concerning whether or not the light was red when she began crossing the street was attributable to the fact that English was not her first language. She did not claim to have trouble understanding English, and confirmed that she had no trouble understanding counsel's questions at the hearing or at the deposition. Her inability to perceive a contradiction that did not exist and her attempt to find an explanation for same does not undermine her credibility. Morever, the issue of whether she walked against the light was irrelevant to whether there was contact.

In any event, any issue of respondent's credibility should not have led the hearing court to reject the similar version testified to by the nonparty witness, which was confirmed by the driver's own admissions at the scene.

Respondent's failure to include certain exhibits in the appellate record does not preclude meaningful review (see *Gabriele v Edgewater Park Owners Coop. Corp., Inc.*, 67 AD3d 484, 485 [1st Dept 2009]), since Supreme Court's findings were largely based on testimony at the framed issue hearing.

In light of the above, we need not reach respondent's alternative arguments. We note that petitioner's policy only applies when, in relevant part, the insured suffers bodily injury as a passenger in a vehicle or as a pedestrian. If respondent was neither a passenger nor a pedestrian, then the policy would not afford coverage. Concur—Sweeny, J.P., Andrias, Manzanet-Daniels, Gische and Webber, JJ.

